# Staunton

SADIE DEFONIS v. CLINCHFIELD COAL CORPORATION.

September 3, 1947.

Record No. 3237.

Present, Hudgins, Gregory, Eggleston, Spratley and Buchanan, JJ.

The opinion states the case.

*S. H. & Geo. C. Sutherland*, for the appellant.

*Penn, Stuart & Phillips*, for the appellee.

BUCHANAN, J., delivered the opinion of the court.

This is an appeal from an award of the Industrial Commission denying a claim of Sadie Defonis to compensation under the Workmen's Compensation Act (Acts 1918, ch. 400, p. 637, as amended; Code, 1942, secs. 1887(1) *et seq.*) for the death of her husband, George Defonis, who was killed August 23, 1945, by a fall of rock while he was loading coal in the course of his employment by the defendant in its mine.

The Commission based its ruling on its finding from the evidence that the claimant had been guilty of conduct "tantamount to desertion," and was, therefore, not entitled to compensation as a dependent of the decedent under section 40 (a) of the Act (Code, 1942, sec. 1887(40) (a)), providing that a wife is conclusively presumed to be dependent "upon a husband whom she had not voluntarily deserted or abandoned at time of the accident."

The substance of the claimant's assignments of error is that the evidence does not establish such desertion, and that even if it does, the Commission erred in considering it because (1) it was not relied on in the grounds of defense, and (2) depositions to prove it were not taken in the time allowed.

George Defonis was the claimant's third husband. She married Alex Kondas in Russell county in 1923. While he was living, and without the benefit of a divorce, she married Lorenza Luna in Pennsylvania in 1929. She was divorced by Kondas in Ohio in 1932. She married Defonis in Dickenson county in 1935.

The evidence of the trouble between claimant and Defonis was not contradicted. It came from two of her sisters and their husbands, and from a brother of Defonis. It established that a few weeks before the death of Defonis, the claimant assaulted him with a liquor bottle, causing wounds which required medical attention. This occurred in the middle of the night when he was asleep, and he went to the home of his sister that night clad only in his underclothes and seeking refuge. She was arrested and fined for that assault and also for being drunk in public. He complained that his wife sold his clothes to buy whiskey, and drew out his wages from the company for the same purpose; that sometimes she had run him out of the house with a knife and he had been forced to sleep under the house and out in the woods. Following the liquor bottle episode, he tried to get his sister and her husband to keep him until he could get a divorce, but they were unwilling, and he stayed at a boarding house in Clinchco after that. The next day after the fight he said he was going to try to get a divorce from her, and never lived with her again. He told his brother he was not going back to his wife because she was drunk every night and he was afraid she would kill him. Claimant's sister said they would see him running every time she would "get high."

On its findings of fact the Commission concluded that

"the conduct of the claimant forced her husband to leave home for his safety and well-being." Not only are these findings "conclusive and binding as to all questions of fact" (Code, sec. 1887(61)), but in this case there is no evidence to the contrary.

The Commission's conclusion "that the conduct of the claimant was tantamount to desertion" is also correct; but the additional words of the same sentence, "and cruelty, entitling the deceased to an absolute divorce," are an inadvertance. Neither cruelty nor desertion for a period of less than two years is ground for an absolute divorce. (Code, secs. 5103, 5104). But that is immaterial here. It is voluntary desertion by the wife existing at the time of the accident that bars her from compensation under section 40 (a) of the Act; and whether that desertion has continued a sufficient time for an absolute divorce, or only a temporary divorce, makes no difference.

The claimant contends that only a voluntary leaving by the wife constitutes such voluntary desertion as section 40 (a) makes a bar to recovery by her. To sustain that contention would permit highly illogical and inequitable results. It would allow a wife to run her husband away from home, and then to say that because he left and she stayed she did not desert him. Who is guilty of voluntary desertion does not depend on who leaves home. Desertion is not limited to desertion of the home. It has the broader meaning of desertion of the marriage relation. Voluntary desertion in section 40 (a) means the same thing it means in divorce cases.

When either spouse voluntarily so behaves that the other can no longer remain with safety in the marriage state, and is forced to go elsewhere for protection, the culpable spouse is guilty of desertion. And it matters not whether the injured party is left in the home or is forced to leave by the behavior. That principle has been stated many times in divorce cases, but its validity does not depend on its environment. It applies in any case where the question

is whether desertion has occurred. It has long been recognized that it occurs when one of the parties has been forced to leave home by the cruelty of the other, and this, as said by Judge Staples in *Latham* v. *Latham*, 30 Gratt. (71 Va.) 307, 321, may be caused by conduct, even without violence, that renders the marriage state impossible to be endured.

"To so treat a wife as to render it impossible for her to live with her husband in safety and in that peace and concord evidenced in every home where both the husband and wife bear the one to the other that affectionate regard and considerations which their relations to each other demand, is on the part of the offending husband desertion and abandonment of the other as fully and completely as if he himself had left the home with intent never to return to it." *Davenport* v. *Davenport*, 106 Va. 736, 744, 56 S. E. 562. And see, *Denny* v. *Denny*, 118 Va. 79, 86 S. E. 835; *Elder* v. *Elder*, 139 Va. 19, 123 S. E. 369; *Ringgold* v. *Ringgold*, 128 Va. 485, 104 S. E. 836, 12 A. L. R. 1383; *Hudgins* v. *Hudgins*, 181 Va. 81, 23 S. E. (2d) 774.

"Cruelty on the part of the husband, which results in the wife's enforced separation from his bed and board, is tantamount to desertion on his part." *Hundley* v. *Hundley*, 182 Va. 14, 16, 27 S. E. (2d) 902.

The claimant's contention that this defense of desertion ought not to have been considered because the depositions to establish it were taken after a time limit of June 1 had been fixed by the Commission is without merit. This limit applied to depositions on another defense made by the defendant of wilful violation of safety rules by the decedent. The same contention was made by claimant's counsel by letter to Commissioner Nickels dated June 15, 1946. It was discussed by correspondence and made clear by letters from the Commissioner that the limit did not apply to the question of the marital status of the claimant.

The assignment of error most strongly urged by the claimant is that the ground of desertion on which the Commission based its award against the claimant was a defense

not stated in the grounds of defense, and that she was not given an opportunity to meet this charge.

Application for a hearing was made by the claimant on March 2, 1946. The defendant filed an answer April 15, 1946, denying liability because (1) claimant was not a dependent of decedent, because not his wife; and (2) decedent's death was caused by his wilful violation of company rules requiring him to set up safety posts.

A hearing was had on May 8 before Commissioner Nickels. The claimant was examined as to her marital status; she exhibited a certificate showing her marriage to Defonis in 1935; she admitted her marriage to Kondas in 1923, which was terminated by divorce in 1932, but she categorically denied that she was married to Luna in 1929. Further evidence on that subject was then suspended to await the decision of a case in this court, which it was thought might settle the question of the effect of these marriages and this divorce. The other evidence on that hearing related to the second ground of defense, and on its conclusion leave was given to take depositions on that point by June 1.

On May 28, claimant took the depositions of two additional witnesses with reference to the second ground of defense, and then followed the correspondence referred to above, which included a letter on June 19 from Commissioner Nickels to claimant's counsel stating he would extend the time for taking depositions relating to the Luna marriage and the identity of the claimant, and that he would later on, when they could be made ready, send defendant's counsel photostatic copies of the exhibits already filed, which counsel wanted in taking depositions, and would then fix a time limit for taking depositions, "including evidence in rebuttal, if you desire to do so." Afterwards, on June 24, the Commissioner wrote counsel asking "that the depositions in this case be concluded by September 1, 1946."

On August 5, 1946, the defendant took the depositions of two sisters of the claimant and their husbands to establish

desertion, and on August 20 it took the deposition of Defonis' brother on the same subject. The claimant objected to the taking of these depositions on the ground that they were not within the permitted time, and also moved to strike out the evidence because not within the grounds of defense.

Immediately after the taking of the depositions on August 5, claimant's counsel wrote this letter to the Commissioner, dated August 5, but apparently meant to be August 6:

"The defendant took some depositions in this case on yesterday, and adjourned the taking of the same till the 19th of this month.

"The claimant does not care to take any in rebuttal of what was taken on yesterday.

"The claimant moves to submit this case, too must (much) time has already been taken in getting the proof in. Counsel for claimant can furnish their brief within a week after the case is closed."

At the conclusion of the testimony on August 20, in which the warrants showing the convictions of the claimant, as stated above, were introduced, claimant's counsel stated that he was at loss to know why defendant's counsel thought the warrants were relevant; and defendant's counsel replied that they were to corroborate the evidence previously introduced to prove that Defonis had justifiably left his wife because of her mistreatment of him, and that, therefore, she was not his lawful wife at the time of his death.

On the record as thus made, Commissioner Nickels rendered his opinion on October 1, 1946, passing over the defense of wilful violation of rules, holding that the claimant's marriage to Luna was bigamous and void because the previous marriage to Kondas was then in effect; and that, therefore, her marriage to Defonis was valid, but because of her desertion of Defonis her claim should be dismissed.

On October 3, the claimant requested a review by the full Commission, and on October 8 filed her petition with the Commission, stating that she and her counsel were taken

by surprise by the action of Commissioner Nickels in deciding the case without first giving them notice that said depositions were admissible, and then giving claimant a chance to file evidence in rebuttal if so desired, and praying that she be granted time to submit rebuttal evidence on the desertion question "because this issue is made for the first time in the award and decision of the hearing commissioner, on October 1, 1946." The Commission replied that at the time of the review the petition would be considered. After review on December 9, the Commission rendered an opinion on December 18 finding "nothing that would justify altering or amending the opinion of Nickels, Chairman, rendered on October 1, 1946, and the same is affirmed and adopted as the opinion of the majority of the Commission," and award was made accordingly.

■ It thus appears that the contention of the claimant that she was taken by surprise is not borne out by the record. The grounds of defense filed in April stated that one of the grounds for denying liability was that "Sadie Defonis was not a dependent of the decedent, because not his wife." It is true that was then understood by counsel, as well as by the Commissioner, to refer to the claim that her marriage to Defonis was void because of her previous marriage to Luna. That defense was made uncertain by her denial that she had ever married Luna, and was nullified by proof that when she married Luna she was still married to Kondas.

The defendant then took the depositions on August 5 to establish that the claimant was not a dependent of the decedent, because she had deserted him, which defendant's counsel say in their brief they did not find out until after the hearing on May 8. That was, of course, an additional and different reason for the general defense that she was not a dependent. Even under technical rules of procedure the defendant would have been allowed to amend its grounds of defense to admit this testimony if considered necessary. However, the Commission has given notice by its rules, adopted

under authority of section 55 of the Act, that in conducting its hearings it is not bound by technical or formal rules of procedure. The purpose served by a statement of grounds of defense is to give notice and prevent surprise. The claimant already had notice, and an amendent would have added nothing to her information.

After the evidence taken on this point on August 5, instead of asking for a ruling on the admissibility of the testimony, the claimant by her counsel wrote the letter of August 5 to the Commission, stating that she did not care to take any evidence in rebuttal of what the defendant had then taken, and moving to submit the case. Again, on August 20, after defendant's counsel expressly stated the purpose of this evidence, she did not withdraw or in any way qualify her written notice to the Commission that she did not desire to take rebuttal testimony, but wanted the case decided.

We are told by defendant's brief on this appeal, which is not controverted by claimant in her reply, that in its brief before the hearing Commissioner, in reply to the point made by the claimant in her brief that the grounds of defense did not cover the defense of desertion, the defendant said:

"We think that the defense that the claimant was not a dependent of the decedent, because not his wife, is broad enough to cover the point, because anything that would show that she was not a dependent as a wife in contemplation of law would be within its meaning."

It added that if the Commission thought the grounds of defense did not cover the point, it asked leave to amend so it would be covered.

By the course followed by her, the claimant clearly elected to stand on the position announced to the Commission in the letter of August 5, after knowledge of the defense asserted, that she did not desire to take further evidence and was submitting the case. She elected to take the risk and stand on her objection. After an adverse decision she must abide the result. It was not to be expected that

the hearing Commissioner would voluntarily apprise the claimant that he expected to decide the case against her, and if she wanted. to change her mind and take some further evidence she had better be about it.

A published rule adopted by the Commission under section 55 of the Act declares that "any petition for a reopen- of the case and the taking of additional testimony will only be favorably acted upon by the full Commission where it appears to the Commission that such course is absolutely necessary and advisable and also where the party requesting the same is able to conform to the rule prevailing in courts of this State for the introduction of after-discovered evidence." The claimant was far from meeting this requirement.

In view of this conclusion it is not necessary to deal with defendant's additional point that the claimant should not be heard to claim that her marriage to Luna, which she testified did not occur, was in fact a bigamous marriage, in order to defeat the defense that her marriage to Defonis was not legal, for which position it cites *Massie* v. *Firmstone*, 134 Va. 450, 114 S. E. 652; *Davis Bakery* v. *Dozier*, 139 Va. 628, 124 S. E. 411; *Bassett & Co.* v. *Wood*, 146 Va. 654, 132 S. E. 700; *McNeir* v. *McNeir*, 178 Va. 285, 16 S. E. (2d) 632.

There is no error in the award complained of and it is, therefore,

*Affirmed.*